Christopher BLACK, Sr., Appellant,

v.

The STATE of Texas.

No. 73,197.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 13, 2000.

John R. Duer, Georgetown, for appellant.

James T. Russell, Asst. Dist. Atty., Belton, for the State.

PER CURIAM.

The appellant was convicted of capital murder in August, 1998, which was committed on February 7, 1998. Penal Code sec. 19.03(a). Pursuant to the jury's answers to the special issues set forth in Code of Criminal Procedure article 37.071, sections 2(b) and 2(e),[1] the trial judge sentenced the appellant to death. Art. 37.071, sec. 2(g). Direct appeal to this Court is automatic. Art. 37.071, sec. 2(h). The appellant raises five points of error, but does not challenge the sufficiency of the evidence to support the verdict.[2] We shall affirm.

In his **first and second points of error**, the appellant alleges that the child capital-murder provision, Penal Code section 19.03(a)(8),[3] violates the Equal Protection Clauses of both the federal and state constitutions.[4] *See* U.S. Const. amend. XIV;[5] Tex. Const. art. I, secs. 3, 3a.[6] He contends that the provision is unconstitutional because it does not require the State to allege or prove that the defendant knew that the victim was under the age of six and, therefore, does not require any additional "aggravating" circumstance be proved before elevating murder to capital murder.

■ Unless a statute challenged on equal-protection grounds interferes with a fundamental right or discriminates against a suspect class, we review that statute using the rational-basis test. *Kadrmas v.*

1. Unless otherwise indicated all future references to articles refer to the Code of Criminal Procedure.

2. The appellant was indicted and convicted for killing an infant less than two years old.

3. "A person commits [capital murder] if he [intentionally or knowingly causes the death of an individual] and:...the person murders an individual under six years of age." Tex. Penal Code § 19.03(a)(8). Unless otherwise indicated, all further textual references to sections refer to the Penal Code.

4. The appellant offers no reason for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, and therefore we will not address his state constitutional argument. *See Muniz v. State,* 851 S.W.2d 238, 251–52 (Tex.Cr.App.1993) (holding that failing to provide a rationale for interpreting the state constitution more broadly than the federal constitution will forfeit error on the state ground) (citing *Heitman v. State,* 815 S.W.2d 681, 690–691 n. 23 (Tex.Cr.App.1991) (explaining that state and federal constitutional claims should be argued in separate grounds providing a separate substantive analysis or argument for each ground)).

5. "No State shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

6. "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3. "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. art. I, § 3a.

*Dickinson Public Schools,* 487 U.S. 450, 458, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988); *Henderson v. State,* 962 S.W.2d 544, 560 (Tex.Cr.App.1997). Capital-murder defendants are not a suspect class for purposes of equal-protection analysis. *Henderson,* 962 S.W.2d at 560. Nor does the death penalty implicate a fundamental right, for "life no longer occupies the status of a fundamental right for persons who have been convicted" of capital murder. *Id.* at 561. We therefore review the child capital-murder provision under the rational-basis test. The rational-basis test requires that we uphold the statute if the provision is rationally related to a legitimate governmental purpose. *See, e.g., Kadrmas,* 487 U.S. at 461–62, 108 S.Ct. 2481 (1988).

In *Henderson* we noted that the United States Supreme Court has consistently recognized that a state has a legitimate and compelling interest in protecting the well-being of its children. *Henderson,* 962 S.W.2d at 562. We further noted that crimes directed toward young children are among the most morally outrageous because they target the most innocent and vulnerable members of society. *Ibid.* We found that the child capital-murder provision is rationally related to the government's interest in protecting young children and expressing society's moral outrage against the murder of young children. *Ibid.* We reasoned that the demarcation of six years of age in section 19.03(a)(8) was not unconstitutionally arbitrary because the statute must draw a numerical line somewhere to retain clarity. *Ibid.* Hence, we held that the statute did not violate equal protection among those who kill children. *Id.* at 562–63.

■ The appellant's argument, however, is not that the statute violates equal protection because the line between five-year-olds and six-year-olds is arbitrary. Rath-

er, he asserts that section 19.03(a)(8) violates equal protection because it creates a capital-murder offense which does not require proof of an aggravating element or his knowledge of that element. The equal-protection violation that the appellant claims is that this treats offenders sentenced under this provision differently than those sentenced under other capital-murder provisions.

By writing the law so that the intentional or knowing killing of an individual under six years of age elevates a murder to capital murder, the legislature designated the victim's status as a young child as the aggravating element. The appellant's assertion that the statute does not require proof of an aggravating element is incorrect, for the State must prove that the victim was a child under six. The only difference between the child capital-murder provision and other capital-murder provisions is that the child capital-murder provision does not require proof of an offender's specific intent as to the nature of the circumstances surrounding the crime.

■ We hold that there is no requirement in section 19.03(a)(8) that an offender know or intend that his victim be a child under six. In interpreting the meaning of a statute, we start with the plain language of that statute unless that would lead to an absurd result. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App. 1991). The text of the capital-murder statute reflects that the legislature understands how to require specific intent as to the nature of the circumstances surrounding a particular method of committing capital murder. In section 19.03(a)(1), the legislature requires that the offender know that his victim is a peace officer or a fireman before authorizing a capital charge. *See* sec. 19.03(a)(1).[7] Section 19.03(a)(8) contains no similar require-

---

7. "A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and: the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and *who the person knows is a peace officer or a fireman."* Tex. Penal Code § 19.03(a)(1) (emphasis added).

ment,[8] so the text of the statute reflects that the legislature intends to dispense with a specific intent as to the victim's status as a young child.

▬▬▬ The question remains whether not requiring a specific intent as to the victim's status as a young child violates equal protection. Social and economic legislation, like the child capital-murder provision, that "does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). In the face of an equal-protection challenge, such legislation carries with it "a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Id.* at 331–32.

The legislature requires that an offender know that his victim is a police officer or fireman in section 19.03(a)(1) to ensure that only those offenders who specifically intended to kill police officers or firemen are subject to a capital-murder charge. The legislature has decided to dispense with any requirement that an offender know or intend that his victim is a child in Section 19.03(a)(8). We have stated that the capital-murder statute is a result-of-conduct offense which also includes nature-of-circumstances and/or nature-of-conduct elements. *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex.Cr.App.1995); *Hughes v. State*, 897 S.W.2d 285, 295 (Tex. Cr.App.1994). But that statement was only descriptive of the capital-murder provisions then in effect, and was not meant as a constitutional limit on future capital-murder provisions. The legislature has decided that offenders who intentionally or knowingly kill shall bear the risk of a capital-murder conviction if their victim is under six.

One reason that the legislature chose six years as the line of protection was that children under six are generally still within the home and are therefore uniquely vulnerable to caregivers and that other adults, such as teachers, may not be around to safeguard the children's welfare. *See Henderson*, 962 S.W.2d at 562. We acknowledged in *Henderson*, however, that six years is an imperfect proxy for all children who are in such a vulnerable position, so "we need not and do not resort to such environment-specific justifications to uphold the Legislature's line-drawing choice." *Id.* at 562–63. Again we need no reason other than the compelling need to protect young children from violence to find a rational basis for the legislature's dispensing with a culpable mental state towards the victim being a young child. The safety of children provides a sufficient rationale to permit the legislature to hold offenders liable when they intentionally or knowingly kill and the victim is a young child.

The legislature's desire to protect child victims independent of the offender's knowledge or intent that his victim is a young child is also found in other Penal Code sections involving children as victims. Injury to a child does not require a culpable mental state as to the age of the victim. *See* sec. 22.04(a); *Zubia v. State*, 998 S.W.2d 226, 227 (Tex.Cr.App.1999). Likewise, knowledge or intent with respect to the victim's age is not an element of indecency with a child. *See* sec. 21.11(a); *Johnson v. State*, 967 S.W.2d 848, 849–50 (Tex.Cr.App.1998). No scienter with respect to the lack of consent in sexual assault and aggravated sexual assault is required when the victim is a child. *Compare* secs. 22.011(a)(1), 22.021(a)(1)(A) *with* secs. 22.011(a)(2), 22.021(a)(1)(B). Nor is mistake of fact with respect to the victim's age a defense to either form of sexual assault. *See Vas-*

---

**8.** "A person commits an offense if he [intentionally or knowingly causes the death of an individual] and: the person murders an individual under six years of age." TEX. PENAL CODE § 19.03(a)(8).

*quez v. State,* 622 S.W.2d 864, 865 (Tex.Cr. App.1981). **Points of error one and two are overruled.**

In **points of error three, four, and five,** the appellant complains that the trial court erred by *sua sponte* excusing a prospective juror off the record and out of the presence of the attorneys and the appellant. He asserts that this action deprived him of his right to effective assistance of counsel guaranteed to him by both the federal and state constitutions because his attorney was denied the opportunity to question the venire member about her qualifications. He also asserts that it violated the requirement of article 33.03 [9] that he personally be present at trial.

During the initial qualification of the prospective jurors, the trial judge, out of the presence of the appellant and the attorneys for both sides, excused Venire Member Wilma Bonds because "she couldn't hear" and said she would later bring a doctor's excuse regarding her hearing impairment. The trial judge heard the venire member's excuse without the appellant or the attorneys present because she arrived during a break after the court had completed the initial qualification of the venire.

We have consistently held that article 35.03 [10] gives a trial court broad discretion to excuse prospective jurors for good reason. *See, e.g., Fuentes v. State,* 991 S.W.2d 267, 277 (Tex.Cr.App.), *cert. denied,* —— U.S. ——, 120 S.Ct. 541, 145 L.Ed.2d 420 (Dec. 2, 1999); *see also Moore v. State,* 999 S.W.2d 385, 399 (Tex.Cr.App. 1999). Government Code section 62.1041 [11] now governs the qualifications for prospective jurors who are deaf or hard of hearing. The statute permits a deaf or hard-of-hearing venire member to request assistance from the court to perform her duties. *See* Gov't Code sec. 62.1041(c), (d), (e). It also authorizes the court to decide that, despite provided accommodations, the juror's hearing loss has rendered her unfit to serve as a juror in that particular case. *Id.* sec. 62.1041(b).

In this case, Venire Member Bonds arrived to court late and asked to be excused from service due to her hearing loss, and the judge granted that request. Government Code section 62.110(c) [12] prohibits a

---

9. "In all prosecutions for felonies, the defendant must be personally present at the trial...." Art. 33.01.

10. "Except as provided by Sections 2 and 3 of this article, the court shall then hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the court shall discharge the juror or postpone the juror's service to a date specified by the court." Art. 35.03 § 1.

11. "(a) A deaf or hard of hearing person is not disqualified to serve as a juror solely because of hearing loss except as provided by this section.

  (b) A deaf or hard of hearing person is disqualified to serve as a juror if, in the opinion of the court, his hearing loss renders him unfit to serve as a juror in that particular case.

  (c) A deaf or hard of hearing person serving as a juror shall be reasonably accommodated in accordance with the Americans with Disabilities Act (42 U.S.C. Section 12101 *et seq.*). An interpreter who is assisting a deaf or hard of hearing person serving as a juror may accompany the juror during all proceedings and deliberations in the case.

  (d) If an interpreter is provided to a deaf or hard of hearing person serving as a juror in a district, county, or justice court, the county shall pay the cost of obtaining those services.

  (e) A deaf or hard of hearing juror may request an auxiliary aid or service for a municipal court proceeding. The city shall honor the request unless the city can demonstrate that another effective means of communication exists. The city shall pay the cost unless the auxiliary aid or service will result in a fundamental alteration of the municipal court proceeding or in undue financial or administrative burdens.

  (f) In this section, 'deaf or hard of hearing' means having a hearing impairment, regardless of the existence of a speech impairment, that inhibits comprehension of an examination or proceeding or communication with others." TEX. GOV'T CODE § 62.1041.

12. "(a) Except as provided by this section, a court may hear any reasonable sworn excuse of a prospective juror and release him from jury service entirely or until another day of the term.

trial judge from excusing jurors for economic reasons without each party of record being present. *See Mays v. State*, 726 S.W.2d 937, 950 (Tex.Cr.App.1986) (holding that error in granting economic excuse is waived if the attorneys are present and do not object); *White v. State*, 591 S.W.2d 851, 856–57 (Tex.Cr.App.1979) (holding that excusing jurors without attorneys present was not a violation of the predecessor of Gov't Code section 62.110(c) because although the jurors' reasons were "job-related," they were not "economic reasons"); *but see Butler v. State*, 830 S.W.2d 125, 132–34 (Tex.Cr.App.1992) (Miller, J., concurring) (arguing that differences between the specific terms of article 35.03 and the general terms of Gov't Code section 62.110 render the latter inapplicable to jury selection in criminal trials). That section does not require the presence of the appellant or his attorney to excuse a venire member for other than economic reasons. *See* Gov't Code sec. 62.110(c). Hence, the trial court did not abuse its discretion in excusing her without the presence of counsel or the appellant. *See* art. 35.03, sec. 1; Gov't Code secs. 62.1041(b), 62.110(c).

Whether the attorneys were given the opportunity to question Venire Member Bonds did not affect the propriety of the judge's decision. The appellant's counsel was not rendered ineffective by not questioning the venire member, for the appellant has not shown that he was prejudiced by his counsel's absence from her excusal. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring that a defendant show that his counsel's errors were so serious as to have deprived him of a trial whose result is reliable to sustain a claim of ineffective assistance).

Likewise, the appellant's absence from the hearing and granting of the excuse, even if error, did not infringe upon his

rights. *See Garcia v. State*, 919 S.W.2d 370, 394 (Tex.Cr.App.1994) (*op. on reh'g*) (ruling that even if the defendant's right to be present is denied, that error is subject to harmless-error analysis). The process of hearing and granting juror exemptions and excuses of this type lack the traditional adversarial elements of most voir-dire proceedings. *See Chambers v. State*, 903 S.W.2d 21, 31 (Tex.Cr.App. 1995) (holding that the trial court's exempting prospective jurors outside the presence of counsel or the defendant did not implicate the defendant's statutory right to be present at trial where the general assembly had not been assigned to any particular case at time of the exemption). Excusing a prospective juror who has a hearing impairment and has requested an excusal is within the trial court's discretion, and the appellant's presence would not have changed the court's ability to make such a decision. *See, e.g., Lawton v. State*, 913 S.W.2d 542, 549 (Tex.Cr.App.1995). **Points of error three, four, and five are overruled.**

Finding no reversible error, we affirm the judgment of the trial court.

MEYERS, J., filed a concurring opinion in which JOHNSON, J., joined.

MEYERS, J., delivered this concurring opinion, joined by PRICE and JOHNSON, J.J.

Appellant claims the "child capital murder statute" is unconstitutional because it does not require the State to prove that the defendant knew the victim was under the age of six and therefore it does not require proof of any additional "aggravating" circumstance. Appellant argues this provision violates equal protection because other capital murder provisions require that the defendant have knowledge of the aggravating circumstances.

The majority correctly concludes that in assessing appellant's equal protection

---

... (c) The court or the court's designee as provided by this section may not excuse a prospective juror for an economic reason un-

less each party of record is present and approves the release of the juror for that reason." Tex. Gov't Code § 62.110(a), (c).

claim, the "rational basis" test applies. *Majority opinion* at 3. Thus, the legislature's classification need only be rationally related to a legitimate governmental purpose. Put another way, we need only be assured "that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

So what legitimate public purpose is served by classifying the murder of a young child as a capital offense, with no requirement that the defendant have knowledge of the victim's age, that is not served in the case of the murder of a peace officer or fireman, which require knowledge of the victim's status?[1] The capital murder classification among these various victims seems, at least in part, to turn upon what it is that renders the victim vulnerable to the offender. Children under six are always vulnerable to the offender. They have virtually no choice about their circumstances; they are entirely at the mercy of anyone who is bigger or who wields some kind of authority. Peace officers and firemen are rendered vulnerable to a criminal offender when they are acting in the lawful discharge of their official duty and the offender has knowledge of their status, and therefore feels threatened by them.[2] Different classes of victims have particular vulnerabilities unique to that class. Children are uniquely vulnerable solely by virtue of their status as children. This vulnerability serves as a legitimate basis for the classification of the murder of a child under six a capital offense, without any showing of knowledge of the child's age on the part of the defendant.

Appellant suggests that without a knowledge requirement, the child-capital

murder provision does not require proof of an aggravating element. The victim's status as a child under the age of six raises what would otherwise be murder to a capital murder. To pass muster under the Eighth Amendment, the aggravating circumstance elevating murder to a capital offense must meet two requirements: "First, the circumstance may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder. [Citation omitted]. Second, the aggravating circumstance must not be unconstitutionally vague." *Tuilaepa v. California*, 512 U.S. 967, 971–72, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The child-murder provision meets both tests: those who murder children under six years of age fall within a subclass of murderers in general, and children under six is a clear and definite category. *Henderson v. State*, 962 S.W.2d 544, 563 (Tex.Crim.App.1997), *cert. denied*, 525 U.S. 978, 119 S.Ct. 437, 142 L.Ed.2d 357 (1998).

With these comments, I join the majority's opinion.

---

1. The only other type of capital murder that is dependent upon the victim's status as the aggravating element is murder of a peace officer or fireman. TEX. PENAL CODE § 19.03(a)(1).

2. It is an offender's knowledge of the officer's or fireman's status, leading to the offender's

inevitable perception of them as a threat, that renders them vulnerable. A peace officer or fireman who is off-duty is generally not any more vulnerable to a criminal offender than anyone else. When off-duty, they are not placed in circumstances in which they present an apparent threat to a criminal offender.