11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Deven Ray Ingram 

Appellant 

Vs.                   No.
11-02-00168-CR B Appeal from Taylor County

State of Texas

Appellee

 

Deven Ray
Ingram was charged with possession, with the intent to deliver, of more than
400 grams of  methamphetamine.  He was also charged in the same indictment
with possession of more than 400 grams of methamphetamine.  Appellant pleaded not guilty and proceeded
to a jury trial.  The jury convicted
appellant of the first count, possession with the intent to deliver
methamphetamine.  The trial court
assessed punishment at 25 years confinement and a $5,000 fine. We affirm.

Trooper
Anthony Bennett testified that on January 26, 2001, he observed appellant
driving without a license plate light. 
When Trooper Bennett initiated the stop of appellant=s vehicle, appellant pulled into a driveway
of a mobile home, parked, and got out of the vehicle.  He was unable to produce a driver=s license.  Trooper Bennett
requested that appellant verbally identify himself so that a computer check
could be run to see if he had a valid driver=s license.  Appellant verbally
identified himself with a false name and date of birth.  In attempting to identify appellant, Trooper
Bennett inquired if the mobile home where they stopped belonged to
appellant.  Appellant answered that it
did.  However, no one in the mobile home
could identify appellant.  








After
being unable to identify appellant and being unable to proceed with enforcement
action without positive identification, Trooper Bennett placed appellant under
arrest and conducted a search of appellant=s vehicle.  During the search,
Trooper Bennett found a glove which contained a Abaggie of marijuana,@ and he also found a large Agreen Tupperware tub@ in the front seat of appellant=s vehicle.  Trooper Bennett
testified that there was an overwhelming odor in the tub.  He further testified that he observed two
gallon-size Mason jars in the Atub.@  One
of the jars contained a white powdery substance, and another contained a liquid
substance.  The tub also contained
tubing and other instruments consistent with the manufacture of a controlled
substance.   Trooper Bennett also
testified that the trunk was partially open when he stopped appellant=s vehicle and that there were items in the
trunk that kept it from latching properly. 
Trooper Bennett observed a large aluminum tank, black hosing, and two
Igloo coolers that smelled of anhydrous ammonia in the trunk. 

            Sergeant
Myles Trigo was the narcotics investigator for the Department of Public Safety,
and he was in charge of the investigation after Trooper Bennett made the
initial arrest.  Sergeant Trigo
testified that he gained entry to the mobile home which appellant had told
Trooper Bennett that he owned.  Sergeant
Trigo testified that the mobile home was filthy.   There were punctured cans of starter fluid which could be used
in making methamphetamine; substances that could be used as cutting agents in
preparing methamphetamine for sale; a Abox of baggies which are used to package material@; ephedrine pills; syringes; empty lithium
battery packages; and lithium batteries. 
Sergeant Trigo also observed propane tanks and fittings for the tanks
that were a bright blue color.  Sergeant
Trigo testified that, when the brass fittings come into contact with anhydrous
ammonia, one of the main ingredients used to manufacture methamphetamine, the
fittings turn a  bright blue color. 

Eddie
Dickie, a supervising criminalist for the Abilene Department of Public Safety
Crime Laboratory, described the tests that were conducted on the liquid
contents of a glass jar found in appellant=s car.  In his opinion, the
contents of the glass jar was 450 grams of methamphetamine. Dickie further
described the tests that were conducted on the powdery substance found in
appellant=s car. 
He testified that, as a result of his review of the reports and his
knowledge of the procedures of the lab, the powdery substance was 59.3 grams of
methamphetamine. 








Appellant
asserts five issues on appeal.  In his
first and second issues, appellant contends that the evidence was legally and
factually insufficient to support his conviction of possession with intent to
deliver.  In his third issue, appellant
also contends that the trial court erred in allowing expert testimony based on
hearsay documents.  Finally, appellant
contends in his fourth and fifth issues that TEX. HEALTH & SAFETY CODE ANN.
' 481.002(5) (Vernon 2003) violated the Equal
Protection Clauses of the United States and Texas Constitutions,[1]
resulting in the discriminatory application of the range of punishment.

In order
to determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  This
standard gives full effect to the responsibility of the trier of fact fairly to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.    Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).   In order to determine if the evidence is
factually sufficient, we must review all of the evidence in a neutral light and
determine whether the evidence supporting guilt is so weak as to render the
conviction clearly wrong and manifestly unjust or whether the evidence
supporting guilt, although adequate when taken alone, is so greatly outweighed
by the overwhelming weight of contrary evidence as to render the conviction
clearly wrong and manifestly unjust.  Cain
v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922
S.W.2d 126 (Tex.Cr.App.1996).  We review
the fact finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, supra; Clewis v. State, supra.  Due deference must be given to the jury=s determination, particularly concerning the
weight and credibility of the evidence. Johnson v. State, 23 S.W.3d 1
(Tex.Cr.App.2000); Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert.
den=d, 522 U.S. 832 (1997).  The
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ Johnson v. State, supra at 9.  The sufficiency of the evidence is a
question of law.  The issue on appeal is
not whether we as a court believe the State=s evidence or believe that the defense=s evidence outweighs the State=s evidence.  See Matson
v. State, 819 S.W.2d 839 (Tex.Cr.App.1991).  The verdict may not be overturned unless it is irrational or
unsupported by proof beyond a reasonable doubt.   Matson v. State, supra.








 The Texas Legislature amended the relevant
statutes in 2001.  These amendments were
effective on September 1, 2001.  Because
this offense took place before the effective date of the 2001 changes, we will
review this case under the statutes in effect at the time of the offense.  Under former TEX. HEALTH & SAFETY CODE ' 481.112 (2000) as it existed, the offense
was defined as Aa person commits an offense if the person
knowingly or intentionally manufactures, delivers, or possesses with intent to
manufacture or deliver a controlled substance listed in Penalty Group 1.@ 
Former Section 481.112(a).  At that
time, the term controlled substance was defined as follows:

[A] substance, including a drug, an
adulterant, a dilutant, an immediate precursor, listed in Schedules I through V
or Penalty Groups 1, 1-A, or 2 through 4. 
The term includes the aggregate weight of any mixture, solution, or
other substance containing a controlled substance.

 

Former TEX. HEALTH &
SAFETY CODE ' 481.002(5) (2000).  If the amount of the controlled substance Aby aggregate weight, including adulterants or
dilutants, [is] 400 grams or more,@ the offense is punishable by confinement for life or confinement for
not more than 99 years or less than 15 years. 
Former Section 481.112(f).  At
the time, as now, TEX. HEALTH & SAFETY CODE ANN. ' 481.102 (Vernon 2003) included
methamphetamine in Penalty Group 1.          

Intent to
deliver can be proven by circumstantial evidence.  Inferences can be made from the conduct of the defendant as well
as the amount of the controlled substance possessed and the manner in which it
was possessed. Rhodes v. State, 913 S.W.2d 242 (Tex.App. - Fort Worth
1995), aff=d, 945 S.W.2d 115 (Tex.Cr.App.), cert. den=d, 522 U.S. 894 (1997); Puente v. State, 888 S.W.2d 521 (Tex.App.
- San Antonio 1994, no pet=n).   Intent is a question of
fact and must be determined by the trier of fact.  With a record that can raise many conflicting inferences, we must
defer to the trier of fact and assume that the trier of fact resolved any
conflict in favor of the verdict in determining if the evidence is sufficient
to show appellant=s
intent.   Matson v. State, supra.  








Here, the
evidence clearly shows that appellant possessed more than 400 grams of
methamphetamine.  Appellant argues that
the State did not prove that the substances found in appellant=s vehicle were immediate precursors and,
therefore, were not proven to be controlled substances.  While immediate precursors were included in
the definition of controlled substance, the statute further defined controlled
substances as any mixture or solution containing a controlled substance.  Dickie described the procedure used in
analyzing the substances found in appellant=s car, and he testified that the substances were methamphetamine.  Sergeant Trigo testified that appellant=s mobile home was used as a workplace not as
a residence.  Also, the items that
Sergeant Trigo observed in the mobile home created an inference that appellant
was going to sell the methamphetamine. 
The photographs of the cutting agent, Enfamil, other unidentified
cutting agents in Abaggies,@ and other Abaggies@ used to package material all support this
inference.  Sergeant Trigo further
testified that:

A cutting
agent, basically, is, once you get your finished product of powder-type of
drug, you can mix certain types of powder with it to expand it so you have a
lot more to sell.  You make more money
that way. 

 

                                                           *    *   
*

 

There are
a lot of items that we come across that are commonly used as cutting agents,
that are commonly used by drug dealers, whether it=s in manufacturing methamphetamine or other
drugs, that are mixed together with their drugs to increase the amount of
material that they have to sell. 

 

Dickie testified that the
methamphetamine found in appellant=s vehicle, if it were diluted with cutting agents having a 25 percent
purity, would yield 32 grams of street methamphetamine.

Here, the
State produced evidence from Trooper Bennett who made the initial contact with
appellant, Sergeant Trigo who led the investigation of appellant, and the
expert opinion of Dickie as to the contents of the mixture seized.  Appellant offered no evidence to contradict
this testimony.  Viewing the evidence in
the light most favorable to the verdict, the evidence is not so weak as to
render the verdict clearly wrong and unjust. 
A rational jury could have found that the State had proven every element
of the offense beyond a reasonable doubt. The evidence is both legally and
factually sufficient to support appellant=s conviction.  We overrule
appellant=s first and second issues on appeal.                

In his
third issue, appellant contends that it was error for the trial court to allow
the testimony of Dickie because he did not perform the tests on the substances
and, therefore, his testimony was based on hearsay documents. 








The trial
court, after a hearing outside the presence of the jury, found that Dickie was
an expert and that his testimony was reliable, relevant, and helpful to the
jury.  Dickie testified that he did not
perform the tests on the substances recovered from appellant=s car. 
J. R. Burch, another DPS chemist, performed the tests under Dickie=s supervision.  Burch had since retired and could not be  located to testify at trial.  Dickie relied upon the following documents
prepared by Burch:  a worksheet, a
submission form, and charts and graphs for each exhibit.  Dickie referred to these documents
throughout his testimony.  However,
these documents were neither offered into evidence nor made a part of the
appellate record. 

Dickie
gave his opinion regarding Burch=s results.  An opinion by an
expert is not hearsay. Aguilar v. State, 887 S.W.2d 27, 29
(Tex.Cr.App.1994), states:  

Yet it is clear under our rules of evidence
that the present opinion of a testifying witness does not meet the definition
of hearsay because it is not, and never can be, a statement Aother than one made by the declarant while
testifying at the trial or hearing.@ TEX.R.CRIM.EVID. 801(d).  Even
if the expert relies in whole or part upon information of which he has no
personal knowledge, communicated to him at or before the time he testifies, the
admissibility of his opinion is not affected Aunless the court determines that he does not have a sufficient basis
for his opinion.@  

 

Dickie, who was qualified
as an expert, was free to offer his opinion based on his expertise and the
documents prepared by Burch.  See
Martinez v. State, 22 S.W.3d 504, 508 (Tex.Cr.App.2000).  We overrule appellant=s third issue on appeal. 

In his
fourth and fifth issues, appellant contends that former Section 481.002(5)
violated the Equal Protection Clauses of the United States and Texas
Constitutions.  Former Section
481.002(5) included Athe
aggregate weight of any mixture, solution, or other substance containing a
controlled substance@ in
its definition of controlled substance. 








The
purpose of the Equal Protection Clauses of both the United States and Texas
Constitutions is to prevent the government from discriminating against any
person or class of persons.  See U.S.
CONST. amend. XIV; TEX. CONST. art. I, ' 3.  Unless a statute challenged
on equal‑protection grounds interferes with a fundamental right or
discriminates against a suspect class, we review that statute using the
rational‑basis test.  Black v.
State, 26 S.W.3d 895 (Tex.Cr.App.2000).  
The rational-basis test provides that legislation is presumed to be
valid and will be sustained if the classification drawn by the statute is
rationally related to a legitimate state interest.  City of Cleburne v. Cleburne Living Center, 473 U.S. 432
(1985).   Protection of the public
health, safety, morals, or some other phase of the general welfare is a
legitimate state interest.  Lawrence
v. State, 41 S.W.3d 349 (Tex.App. B Houston [14th Dist.] 2001, pet=n ref=d). 
As stated by the court in Watts v. Mann, 187 S.W.2d 917, 924
(Tex.Civ.App. B Austin 1945, pet=n ref=d):  

The Legislature may classify law violators
and impose different penalties, inhibitions and restrictions upon the several
classes, provided there is a reasonable basis for the classification.  In determining whether there is a reasonable
basis for the classification there is a general presumption that the
Legislature has done its duty, not violated the Constitution; and therefore the
classification will be upheld unless it appears, clearly and without doubt, that
it has no reasonable basis of support.

 

Appellant is not a member
of a suspect class.  Applying the
rational-basis test to the definition of controlled substance in former Section
481.002(5), we determine that the State has a legitimate interest in protecting
the public health, safety, and morals. Appellant has not overcome the general
presumption that the State has not violated the United States or Texas
Constitutions.  Further, appellant was
not treated differently than any other defendant found to be in possession of
more than 400 grams of a controlled substance.   We overrule appellant=s fourth and fifth issues on appeal.

The
judgment of the trial court is affirmed. 

 

JIM
R. WRIGHT

JUSTICE

 

October 2, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











[1]U.S. CONST. amend. XIV; TEX. CONST. art. I, ' 3.