**Affirmed and Memorandum Opinion filed February 5, 2013.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-11-00844-CR**

---

**CEDRIC CHARLES FIGGS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 15,824**

---

## MEMORANDUM OPINION

A jury convicted appellant, Cedric Charles Figgs, of burglary of a habitation and sentenced him to confinement for life in the Texas Department of Criminal

Justice Correctional Institutions Division.[1] *See* Tex. Penal Code Ann. § 30.02 (West 2011).  Appellant challenges his conviction, arguing that the trial court erred in allowing him to proceed pro se at trial.  We conclude that appellant voluntarily and competently waived his right to counsel and therefore affirm.

## BACKGROUND

On appeal, appellant contends the trial court failed in its duty to inquire whether his waiver of his right to counsel and corresponding decision to proceed pro se were made intelligently and knowingly.[2]  Because appellant does not challenge the sufficiency of the evidence supporting his burglary conviction, we include only those facts necessary to address his single issue on appeal.

Christopher Kaminski returned home at about 4:30 in the afternoon of May 21, 2009, to find that his back door had been kicked in.  Upon entering the house, Kaminski determined that two rifles and a jewelry box were missing from the house.  The Washington County Sheriff's Department began an investigation of the burglary.  On June 19, 2009, appellant, already in custody, agreed to give a voluntary videotaped statement to the Sheriff's Department investigators.  During that statement, appellant told the investigators the missing jewelry box was thrown off a bridge in the Gun and Rod Estates subdivision.  As a result of appellant's

---

[1] Appellant's sentence was enhanced by two prior convictions.

[2] Appellant has appointed counsel on appeal and on April 16, 2012, appellant's appointed counsel filed a brief asserting a single issue on appeal.  On August 7, 2012 appellant filed a pro se "Appellant's Brief Supplementation" asserting there was "error made in the jury charge by the trial court."  On January 2, 2013, appellant filed a motion to withdraw his "Appellant's Brief Supplementation."  Appellant's motion is granted, his "Appellant's Brief Supplementation" is withdrawn, and we address only the single issue raised in the brief filed by his appointed counsel.

statement, the jewelry box taken from the Kaminski residence was recovered in the location where appellant admitted it was thrown off the bridge.[3]

On July 28, 2010, appellant was indicted on eight counts of burglary of a habitation. The trial court appointed Bruno Shimek as appellant's attorney. On February 10, 2011, the trial court conducted a pre-trial hearing. During that hearing, Shimek informed the court that appellant "has asked that I be withdrawn or replaced as his counsel. He says he no longer trusts me, he says I'm racist." After the trial judge informed appellant that it was not going to appoint another lawyer to represent him, the following exchange occurred:

THE COURT: Do you want to represent yourself?

[APPELLANT]: If I a - - provide me with a law library I'd be much glad to.

THE COURT: Do you know something about practicing law?

[APPELLANT]: Yes, sir, I do. I'm in federal civil suits and there's not that much difference in court proceedings.

. . . .

THE COURT: All right. How many court-appointed lawyers have you had?

[APPELLANT]: Two; this one and a previous one, Mr. Lee Van Richardson.

THE COURT: Well, you need to understand something. You can write all the letters you want to this Court or to the district attorney or to your lawyer, whoever it is.

---

[3] During appellant's trial, evidence was admitted that a stolen shotgun, not a rifle, was also recovered by Sheriff's investigators as a result of appellant's statement. The shotgun was stolen during one of a series of burglaries that occurred in Washington and Burleson Counties. It appears from the record that appellant was initially detained in May 2009 as a suspect in another matter, the theft of a vending machine.

You can complain about them, you can call your lawyer a racist, you can call the prosecutor a racist, you can call this Court a racist, but you need to understand something. It is not going to inure to your benefit to try to create a conflict with every lawyer that you have. You need to have a good lawyer representing you. You have a good lawyer representing you. This lawyer probably has the best record - - trial record in this judicial district defending people. You're not going to get any better lawyer than Mr. Shimek. The Court suggests that you cooperate with him so that he can defend you in this case. You obviously need to be defended in this - - what is it, seven or eight-count indictment - - eight-count indictment. But the Court's not going to run through a list of lawyers and appoint you lawyer after lawyer. You need to understand and appreciate that.

Do you understand that?

[APPELLANT]: Yes, sir. May I voice my opinion for - - on an issue, sir? I've been locked up 21 months, going on 21 months. I've never had a bond reduction or any motions filed on my behalf or anything.

The evidence - - I don't even know what all the evidence they have against me, a video tape confession or something I have supposed to gave [sic], I haven't even seen that, and I've been locked up 21 months, and here I am scheduled to go to trial on the 21st now of this month, so I'm in the blind.

MR. SHIMEK: Judge, I'd just ask if he wants me off this case I prefer not to be forced to defend him if he doesn't want me.

He's called me a racist. I don't appreciate that. I have not done anything, said anything that would

4

indicate that, and I really don't want to - - and he says he wants to represent himself, I'd ask that the Court let him do it.

[APPELLANT]: He's made it clear that he don't think he can win this case, Your Honor, but he haven't proved to me or showed me any evidence of the DA.

MR. SHIMEK: Judge, I told him repeatedly that the state does not give me copies of the police report. I have told him what is in the police report. I've given him a summary of the statements. I don't have access and I don't have copies of those reports and frankly don't have them in any other case. And he, for whatever reason, doesn't believe me, then I really don't want to represent him if that's the way he feels. And to be forced here to represent him when he's called me a racist, I just don't appreciate that and don't think I can do it.

[APPELLANT]: Your Honor, I proceed to trial with him only if I am able to object during the trial if anything that the DA has - - -

MR. SHIMEK: Maybe he wants to represent himself, Judge.

THE COURT: One moment.

[APPELLANT]: If the DA question the witness or something and my attorney don't object on it, I would like to object and point it out to my attorney as to why the objection needs to be made.

THE COURT: If you have a lawyer representing you at your trial you're not going to be able to make the objections during the trial. Your lawyer will be making those objections for you.

[APPELLANT]: Bring it to your attention, Your Honor, I have a constitutional right because it's my trial and

5

anything that's not objected to I cannot come back and appeal. That's a Supreme Court ruling.

MR. SHIMEK: Judge, I'd let him represent himself. That's what he apparently clearly wants to do.

[APPELLANT]: I have - - I will represent myself if I could have 30 days in the law library, the jail doesn't have a law library, the case law pertaining to my issues or charge, I represent myself. But I've been here 21 months, like I said, I'm entitled to see the DA file to know what I'm up against and how to prepare my trial - - my case.

THE COURT: What law entitles you to see the DA's file?

[APPELLANT]: The Code of Criminal Procedure.

THE COURT: It does?

[APPELLANT]: Yes, sir.

THE COURT: Where?

[APPELLANT]: I don't have my file with me but I have it in my file. The U.S. Constitution also permits me to represent myself and gather all information that the DA has against me. I'm not standing here making - - -

THE COURT: So are you asking this Court to let you represent yourself?

. . . .

[APPELLANT]: Yes, Your Honor.

THE COURT: You understand that - - that the trial will be conducted consistent with the laws of this state.

[APPELLANT]: Yes, Your Honor.

6

THE COURT: Any opinions that have been handed down by the Court of Criminal Appeals or the courts of appeal in this state which apply.

Do you understand that?

[APPELLANT]: Yes, Your Honor.

THE COURT: Do you understand that this Court also must be guided by any decisions of the Supreme Court of the United States?

You understand that?

[APPELLANT]: Yes, sir.

THE COURT: You understand that the Court is going to apply the Texas Rules of Evidence and the Code of Criminal Procedure at this trial.

[APPELLANT]: Yes, sir.

THE COURT: Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: And are you telling this Court that you're prepared to educate yourself on all of these matters and to defend yourself?

[APPELLANT]: Yes, if given a law library with the short time of notice to prepare for trial. The law books I have is out – dated since 1971, and those are the jail's law library books that I have that I've been getting bits and pieces from to try to make sense of this. My indictment came 14 months after my incarceration. My attorney told me on the 3rd of this month that ya'll have ten years to indict me after my incarceration and that is not true.

. . . .

7

| | |
|---|---|
| THE COURT: | How much time are you asking the Court to give you in order for you to prepare for trial Mr. Figgs? |
| [APPELLANT]: | Thirty days and a law library, somewhere I can have adequate knowledge of the up-to-date law on the cases that has already been tried in my situation, in my criminal charge, sir, which there is no law library in the jail, in the Washington County jail, so here at the courthouse or some - - if ya'll have an adequate law library where I can research case law pertaining to my charge. |
| THE COURT: | All right. The Court's going to set this case for trial on April the 18th. The Court's going to grant both yours and Mr. Shimek's request to remove Mr. Shimek as your lawyer. |

Another pretrial hearing occurred on April 7, 2011. During this hearing, the following exchange occurred:

| | |
|---|---|
| THE COURT: | The record will reflect the defendant is before the Court. The State is represented by its district attorney, Mr. Parham. The record will further reflect that Mr. Figgs is unrepresented by counsel, at his request. |
| . . . . | |
| THE COURT: | Are you ready to proceed with trial on April the 18th? |
| [APPELLANT]: | Yes, sir. |
| THE COURT: | You still persist in your request to represent yourself? |
| [APPELLANT]: | Yes, sir. |
| THE COURT: | You do not want to request that this Court consider any request to appoint you an attorney? |

8

[APPELLANT]: It would be - - it would be in my best interest that the Court would, due to the fact that my - -

THE COURT: That the Court appoint a lawyer to represent you?

[APPELLANT]: Yes, sir. And on that ground because I am not knowledgeable of the law as an attorney.

THE COURT: So you're now asking the Court to appoint you a lawyer?

[APPELLANT]: Well, not unless - - you know, the prior two attorneys wouldn't do what I asked, which was file a motion to dismiss this case under Article 32.01 and 28.061 because the indictment is defective; it came back 14 months after my arrest.

There is nothing in the law books that done read or could find that, by me being - - by my original arrest date and the case getting missed and I'm getting indicted under the original arrest - - I was never released - - that Article 32.01 and 28.061 does not apply to me. There is nothing in the case law and in the case book that says that.

THE COURT: Are you asking the Court now to appoint a lawyer to represent you, or are you persisting in representing yourself?

[APPELLANT]: I'm ready to go to trial, Your Honor.

THE COURT: That's not the question right now. The question is, do you persist in your position to represent yourself? In other words, do you want to keep representing yourself?

[APPELLANT]: Yes, sir.

THE COURT: So you are not making a request of this Court to appoint you a lawyer?

[APPELLANT]: No, sir.

9

THE COURT: And you are ready to go to trial on April the 18th?

[APPELLANT]: Yes, sir.

A third pre-trial hearing occurred on April 18, 2011. At the hearing, appellant appeared in court without counsel. After addressing several matters, the hearing once again turned to the issue of appellant representing himself:

[PROSECUTOR]: This is Article 1.051, right to representation. I believe it's paragraph (d), is it says that that paragraph needs to be executed by the defendant because he wishes to represent himself, if he so desires to sign it, if not then it's simply on the record that he refuses to sign.

It also talks, and I'm not sure if it's paragraph (e) or (f), that an attorney sitting in the courtroom just in case he needs to ask some type of question would be available. It also references that that attorney does not need ten days at the Court's discretion to prepare for trial.

So if the Court wants to appoint someone to just sit here should Mr. Figgs have a question procedurally or whatever form or fashion, he would be available, or she.

[APPELLANT]: I object, Your Honor. Under the United States Constitution I do not need a sitting lawyer for me to answer my own questions to any witness or to the jury in voir dire.

[PROSECUTOR]: And I'd certainly concur with Mr. Figgs on that, Judge; however, Article 1.051, the attorney can sit over there in a chair perhaps where Ms. Mitchell is sitting, just simply be available.

THE COURT: Mr. Figgs, the Court has certainly reviewed these matters with you, but you do understand that you do have a right to have a lawyer to represent you

and that you are - - if you're indigent that the Court can appoint a lawyer to represent you? And you further understand that you're not required to accept a lawyer, that if you want to represent yourself then you are entitled to do so.

Are you still persisting in representing yourself?

[APPELLANT]:   No, sir. If the Court appoint me a lawyer for trial that will be fine, but the lawyers I had in the past refused to do anything that I requested. And by law I am in control of my own trial and any suggestions I make they should take notice of it.

THE COURT:   So are you requesting that the Court appoint a lawyer to represent you?

[APPELLANT]:   Yes, Your Honor.

. . . .

THE COURT:   The Court's going to grant your request and appoint a lawyer to represent you . . . .

. . . .

THE COURT:   All right. The Court's going to reset this matter on the trial docket of the Court to August the 1st and the Court will appoint a lawyer to represent Mr. Figgs. That lawyer will be getting in contact with you, Mr. Figgs.

Following the April 18, 2011 hearing, the trial court appointed Travis Fleetwood to represent appellant. Another pretrial hearing occurred on August 18, 2011. During that hearing, appellant rejected, on the record, a plea bargain offer from the State.

The final pretrial hearing occurred on September 1, 2011. The following occurred during that hearing:

THE COURT: The record will reflect that Mr. Figgs is before the Court without counsel; however, the record will further reflect that Mr. Travis Fleetwood, his former counsel, is present and before the bench. The State is represented by its district attorney, Mr. Bill Parham.

Mr. Figgs, you indicated on August the 30th, when you were before the Court a couple days ago, that you did in fact want to represent yourself.[4]

The Court has a waiver of counsel. I'm going to hand it to you at this time and ask you to look at it and sign it, so that that could be placed in the files or in the record of this case.

. . . .

THE COURT: I know that, having gone over this with you before, when you indicated that you wanted to represent yourself, you're certainly making this decision of your own volition, is that correct?

[APPELLANT]: Yes, Your Honor.

THE COURT: I mean, no one is forcing you to sign this or to take the position that you want to represent yourself; is that right?

[APPELLANT]: Well, I wouldn't say force. All the attorneys that I had in the past seems to refuse to do what I ask or suggest on my behalf, so I am in this position to - -

THE COURT: No one is making you make the decision to represent yourself - -

[APPELLANT]: No sir.

THE COURT: - - are they?

---

[4] There is no reporter's record from the August 30, 2011 hearing in the appellate record.

12

[APPELLANT]:    No, sir.

THE COURT:    And you understand that you are obviously going to be at a disadvantage in representing yourself in the trial of this case, but you still persist in representing yourself; is that right?

[APPELLANT]:    Yes, sir.

THE COURT:    How old are you?

[APPELLANT]:    I'm 49 years old.

THE COURT:    And you can read and write, correct?

[APPELLANT]:    Yes.

. . . .

THE COURT:    All right.  The Court is going to accept your waiver and allow you to represent yourself.

On September 1, 2011, appellant executed a "Defendant's Waiver of Counsel" as required by article 1.051(g) of the Texas Code of Criminal Procedure. That waiver provides:

I have been advised this [first] day of [September], 2011, by the Judge of the 21st Judicial District Court of my right to representation of counsel in the case pending against me.  I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge.  Understanding my right to have counsel appointed for me free of charge if I am not financially able to employ counsel, I wish to waive that right and request the Court to proceed with my case without an attorney being appointed for me.  I hereby waive my right to counsel.

Appellant's case went to trial on September 6, 2011, with appellant defending himself.  At the close of the evidence, the jury found appellant guilty. During the punishment phase of the trial, appellant entered pleas of "True" to each

13

of the punishment enhancement paragraphs. At the conclusion of the punishment phase of appellant's trial, the jury assessed appellant's punishment at confinement for life in the Texas Department of Criminal Justice Correctional Institutions Division. This appeal followed.

## ANALYSIS

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. *Faretta v. California,* 422 U.S. 806, 807 (1975). The Supreme Court also found in the Sixth Amendment an independent constitutional right of an accused to conduct his own defense. *Id.* at 819-820. The Supreme Court held that it is for the accused personally to decide whether assistance of counsel in his particular case is to his advantage, and his choice must be honored out of that respect for the individual which is the lifeblood of the law and even if his choice may ultimately be to his own detriment. *Id.* at 834.

For a criminal defendant's decision to waive his right to counsel and to represent himself at trial to be valid, the decision must be made (1) voluntarily, (2) knowingly and intelligently, and (3) competently. *Cudjo v. State*, 345 S.W.3d 177, 183 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999)).

In a single issue on appeal, appellant contends the trial court failed to make a proper inquiry into whether appellant's waiver of his right to counsel was made knowingly and intelligently in violation of the Sixth Amendment to the United

States Constitution and article 1, section 10 of the Texas Constitution.[5]  While framed as a single issue, appellant asserts his decision to waive his right to counsel was invalid for two reasons.  First, appellant contends his decision to waive his right to counsel was not voluntary because it was coerced by his dissatisfaction with the performance of his court-appointed attorneys.  Second, appellant contends the trial court failed in its duty to ascertain whether appellant was competent to waive his right to counsel.  We turn first to appellant's coercion argument.

To be voluntary, a criminal defendant's decision to waive the right to counsel must not be coerced.  *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997).  According to appellant, he was dissatisfied with his court-appointed attorneys' handling of his defense.  Appellant contends his attorneys had refused to present to the trial court motions he had drafted and also that his attorneys' efforts on his behalf were half-hearted because they did not think he could win his case.  A criminal defendant's choice to represent himself, however, is "not rendered involuntary merely because it was motivated by his unwillingness to proceed with the specific attorney appointed to represent him."  *Cudjo*, 345 S.W.3d at 184.  Here, as in *Cudjo*, the record establishes that appellant voluntarily exercised his constitutional right to represent himself despite the trial court's repeated warnings of the dangers of self-representation and consistent efforts to convince appellant that he should allow his court-appointed attorneys to handle his defense.  Under those circumstances, the trial court had no choice but to allow appellant to represent himself during trial; to do otherwise would have violated appellant's

---

[5] Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *See Black v. State*, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000).

independent constitutional right to conduct his own defense. *Id.* at 185. We hold appellant voluntarily waived his right to counsel.

A decision to waive counsel is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Ganther v. State*, 187 S.W.3d 641, 647 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). In his brief, appellant concedes the trial court properly admonished him regarding the dangers and limitations of self-representation. Despite that concession, appellant contends the trial court did not fulfill its duty to verify that appellant was competent to waive his right to counsel. Appellant argues that if the trial court had conducted a "long and thorough inquiry" it would have determined that appellant's "aptitude to represent himself . . . was fatally exaggerated." Appellant goes on to argue that the trial court was required to conduct an in-depth examination into not only appellant's intelligence, but also his education and experience relative to criminal trial procedures and his realistic ability to effectively represent himself during a criminal trial.

A trial court is not required to make a formulaic inquiry into the defendant's age, education, background, or previous mental health history whenever a defendant expresses a desire to represent himself during his trial. *Martin v. State,* 630 S.W.2d 952, 954 (Tex. Crim. App. 1982). But the record must contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make an assessment of the defendant's knowing exercise of the right to defend himself. *Goffney v. State,* 843 S.W.2d 583, 584-585 (Tex. Crim. App. 1992) (citing *Blankenship v. State,* 673 S.W.2d 578, 583 (Tex. Crim. App. 1984)). A trial judge must investigate as long and as thoroughly

as the circumstances of the case before him demand. *Blankenship,* 673 S.W.2d at 583.

The competence that is required of a defendant seeking to waive his right to counsel is not competence to function at the same level as a licensed attorney, but competence to waive the right. *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989); *Cudjo*, 345 S.W.3d at 185. "The standard for waiving the right to counsel, generally, is no higher than that for competency to stand trial: '[1] whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [2] whether he had a rational as well as a factual understanding of the proceeding against him.'" *Cudjo*, 345 S.W.3d at 185–86 (quoting *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex. Crim. App. 2010)). The defendant's choice to waive his right to counsel need not be wise. *Scarbrough*, 777 S.W.3d at 92. Indeed, if that was the requirement, it would be the rare defendant actually permitted to exercise his constitutional right to defend himself. Instead, if it is an informed decision, the defendant must be allowed to conduct his own defense even if it ultimately works to his own detriment. *Id.*

As demonstrated by the portions of the record quoted above, we hold the trial court fulfilled its duty to verify that appellant was competent to waive his right to counsel and exercise his constitutional right to conduct his own defense. For example, the record shows that appellant repeatedly waived his right to counsel after being informed of the consequences of such a waiver, that he consulted with his court-appointed lawyers during the period they represented him, that he was informed of the police report and witness statements against him, and that he understood the proceedings, including details such as the timing of his indictment. However unwise appellant's choice to represent himself may have been, it is a

choice that the Constitution gave him, and we cannot say on this record that he was incompetent to understand the choice he was making.

## CONCLUSION

Having addressed and rejected both arguments raised in appellant's single issue on appeal, we overrule that issue and affirm the trial court's judgment.


/s/     J. Brett Busby
        Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).