

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0810-19

### THE STATE OF TEXAS
v.

### RICARDO MATA, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS HIDALGO COUNTY

KELLER, P.J., delivered the opinion of the Court in which HERVEY, RICHARDSON, YEARY, KEEL, AND SLAUGHTER, JJ. joined. WALKER, J., filed a concurring opinion in which MCCLURE, J., joined. NEWELL, J., concurred.

Does the *Miranda* rule require the police to give *Miranda* warnings to a suspect who is in custody before asking him the location of a kidnapped child? We answer that question, "No."

## I. BACKGROUND

### A. The Kidnapping

A fifteen-year-old girl was kidnapped. Appellee called the girl's mother and demanded a ransom of $300 for her release. He said this was the amount he had "paid" for her. Antonio Porraz,

an Investigator in the Major Crimes Unit of the Hidalgo County Sheriff's Office, posed as a friend

of the mother to negotiate the trade. While he talked on the phone with Appellee, Major Crimes Unit

Investigator Hermelinda Chavez had Appellee's cell phone "pinged," and they were able to trace the

phone's location. Surveillance was set up outside of the house where the phone was traced to.

Appellee left the house in a vehicle, and the phone's "pinged" location matched his movements.

While Porraz was talking to Appellee on the phone, Appellee mentioned that his battery was dying.

The investigators had a marked police car—driven by Deputy Noe Canales—stop Appellee's

vehicle.

Porraz and Chavez arrived on the scene and questioned Appellee regarding the kidnapped

girl. They did not administer *Miranda* warnings. Porraz immediately accused Appellee of being the

kidnapper and said that "they got him."[1] After further "aggressive interrogation,"[2] Appellee said he

would help locate the girl if they let him go. Investigator Porraz responded that Appellee would not

be free to leave. After continued interrogation, Appellee revealed the child's location. Once she was

found, Appellee was transported to the sheriff's office.

### B. The Trial Court's Suppression Ruling

Appellee filed a motion to suppress statements made by him to law enforcement. One of his

contentions was that the statements elicited in the roadside questioning should be suppressed because

---

[1] This is how the trial court's suppression order characterized the encounter. We assume for the purpose of this discussion that this characterization is supported by the record. We note that Porraz testified that Appellee initially denied knowing anything about the girl but when told that Porraz was the person Appellee had been talking to on the phone, Appellee's "demeanor totally changed," and he then offered to tell them where the child was in exchange for his release.

[2] This is the trial court's characterization of the encounter. We assume that characterization is correct but note that the trial court did not claim that any physical coercion was used.

the officers did not give him *Miranda* warnings. The trial court agreed, suppressing any "statements alleged to have been made by [Appellee] at the time he was detained on the side of the road and in response to direct questioning from Investigator Porraz, Chavez, and or Deputy Canales." The trial court found that Appellee was "not free to leave the side of the road" at the time he gave the roadside statements and that *Miranda* warnings had not been given.[3]

## C. Appeal

On appeal, the State argued that the roadside questioning fell within the public safety exception to the *Miranda* rule and that the resulting statements were admissible. The court of appeals disagreed, holding that the public safety "exception is a narrow one, and it has only been used in situations involving the use of guns."[4] The appellate court concluded that "the officers had no indication of a weapon or gun being involved or used to endanger the safety of the public," and the court declined to construe the public safety exception more broadly because that "may lessen the clarity of the *Miranda* rule."[5]

## II. ANALYSIS

In *New York v. Quarles*, the Supreme Court held that there was "a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence."[6] The Court held that the exception did not depend on the motivation of the officers

---

[3] The trial court also suppressed a written statement that Appellee gave later after receiving *Miranda* warnings, but that ruling was reversed by the court of appeals.

[4] *State v. Mata*, No. 03-17-00494-CR, 2019 WL 3023318, *4 (Tex. App.—Corpus Christi-Edinburg July 11, 2019) (not designated for publication).

[5] *Id.*

[6] 467 U.S. 649, 655 (1984).

involved,[7] who had to be free to respond to "a kaleidoscopic situation . . . 'where spontaneity rather than adherence to a police manual is necessarily the order of the day.'"[8]  The court explained that the doctrinal underpinnings of *Miranda* did not require it to be "applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety."[9]

The Court found that the police in its case, "in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts  of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket."[10] Because the gun's location was unknown to the officers, "it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it."[11]  The Court explained that requiring *Miranda* warnings before asking about the gun might cause "suspects in Quarles' position" to be "deterred from responding."[12]  The Court said that deterring a suspect from responding was deemed acceptable when the primary social cost was the possibility of fewer convictions, but Quarles' case involved more than that—a danger to the safety of the public posed by the gun.[13]

So the Court concluded that "the need for answers to questions in a situation posing a threat

---

[7]  *Id.* at 656.

[8]  *Id.*

[9]  *Id.*

[10]  *Id.* at 657.

[11]  *Id.*

[12]  *Id.*

[13]  *Id.*

to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."[14] The Court was unwilling to put officers in the "untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them."[15] The Court acknowledge that the "narrow exception" it recognized here would to some degree lessen the "desirable clarity" of the *Miranda* rule.[16] But the "public safety" exception it recognized "lessens the necessity of [an] on-the-scene balancing process" and would "not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it."[17] The Court believed that "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect."[18] The public safety exception, "far from complicating the thought processes and the on-the-scene judgments of police officers, will simply free them to follow their legitimate instincts when confronting situations presenting a danger to the public safety."[19]

---

[14] *Id.*

[15] *Id.* at 657-58.

[16] *Id.* at 658.

[17] *Id.*

[18] *Id.* at 658-59.

[19] *Id.* at 659.

The court of appeals restricted the "public safety exception" to the situation in which a weapon is involved. But everything the Supreme Court said in *Quarles* applies with at least as much force to the kidnapping of a child. Even the kidnapping and holding of an adult is a very serious matter. When a child has been kidnapped, the State's interests are at their zenith. The State has a compelling interest in protecting the well-being of its children.[20] We have recognized that even the slightest chance of rescuing a live, kidnapped child justifies overriding the attorney-client privilege.[21] The Supreme Court of California recognizes a "rescue" doctrine that allows a statement taken in the absence of *Miranda* warnings to be admitted if there was a reasonable possibility at the time of interrogation of rescuing a live kidnapping victim.[22] Police officers need to have freedom to rely upon their instincts when it comes to rescuing kidnapping victims, especially when those victims are children. The possibility that warnings will deter a suspect from giving information leading to the rescue of a child is not worth the societal cost. In fact, saying that a suspect has a "right to remain silent" hardly makes sense when the question is, "Where is the kidnapped child?"

The Supreme Court recognized that the small loss of clarity to the *Miranda* rule was justified in light of the interests underlying the "public safety" exception. We see no further loss of clarity in recognizing that the "public safety" exception extends to attempts to find a kidnapped child. The

---

[20] *Black v. State*, 26 S.W.3d 895, 897 (Tex. Crim. App. 2000).

[21] *Henderson v. State*, 962 S.W.2d 544, 557 (Tex. Crim. App. 1997) ("Even if authorities believed that the chance of the maps leading to a live baby was remote, they were entitled to pursue that remote possibility. If the child had been abandoned, or secreted with an accomplice of appellant's, his life or health might have been in jeopardy.").

[22] *People v. Davis*, 46 Cal. 4th 539, 593-95, 208 P.3d 78, 122-24 (2009). The California court considers this doctrine analogous to but distinct from the "public safety" exception. *Id.* at 593, 208 P.3d at 122-23.

*Quarles* case involved the location of a weapon, but its rationale was broader than that, and that rationale easily applies to a situation involving a kidnapped child.

We conclude that the *Miranda* rule poses no bar to the admission of the roadside statements in this case. We reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

Delivered: June 23, 2021

Publish