COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MARIO RAMOS,                                                 )

                                                                              )              
No.  08-04-00085-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
409th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )             
(TC# 20030D03578)

                                                                              )

 

 

O
P I N I O N

 

Appellant Mario
Ramos appeals his conviction for aggravated assault with a deadly weapon.  A jury found Appellant guilty of the offense
as charged in the indictment and assessed a punishment of 55 years= imprisonment.  Appellant raises four issues on appeal, in
which he argues the trial court:  (1)
erred in having the jury assess punishment without an election made in writing;
(2) erred in admitting out-of-court testimonial statements; and (3) erred in
admitting photographs of the complaining witness.  Appellant also complains that his trial
counsel rendered ineffective assistance at trial.  We affirm. 








On August 30,
2002, Donald Buchanan was watching television in his home at 5980 Wrangler
Drive, El Paso, Texas.  A woman rushed
into his house and asked him to call the police.  She was speaking in Spanish.  Mr. Buchanan did not speak Spanish, but the
woman Akept
saying police, police, police.@  She was hysterical, crying, shaking, and a Abloody mess.@  The police arrived ten to twelve minutes
later.  Emergency personnel treated the
woman in Mr. Buchanan=s
house for about thirty to forty minutes. 


Clifford Vance, a
firefighter and EMT for the El Paso Fire Department, was one of the first to
respond to Mr. Buchanan=s
call.  Mr. Vance observed a woman who had
been assaulted and beaten very badly. 
The woman was covered in blood and her hair was completely matted and
saturated with blood.  Upon inspecting
her injuries, Mr. Vance observed fresh iron marks on her body and blunt
puncture wounds on her arms, shoulders, head, and other parts of her body.  Mr. Vance described her demeanor as
horrified, Achoked
up,@ very scared, and shaking.  Over Appellant=s
objection, Mr. Vance testified that while he was treating her, the woman kept
saying Aplanchar
or panchar@ over and
over again and expressed concern about her children.  To assess her injuries, emergency personnel
doused the woman with a saline solution. 


Herman Miller, a
paramedic with the El Paso Fire Department who assisted at the scene, testified
that the woman he treated had fresh multiple injuries and burns throughout her
body.  Mr. Miller observed contusions to
her head and first and second-degree burns on various parts of her body.  Mr. Miller recalled that she was in a
hysterical state and was repeatedly asking for her children.  In response to his questions about what had
happened, the woman told Mr. Miller that her boyfriend had hit her with an
iron.








When Officer David
Medina and his partner arrived, the woman was already being treated by
emergency personnel.  She was screaming
hysterically in Spanish.  Over Appellant=s objection, Officer Medina testified
that she was screaming, Amy
children@ and that
her husband had hit her.  Officer Medina
asked her how he had hit her and she told him Awith
an iron.@  She told him her husband was Mario Ramos and
that her name was Virginia Salinas.  Ms.
Salinas also told the officer that she was concerned about the children because
they were still in the house and her husband was there.  Officer Medina was able to determine that her
home was located at 5809 Wrangler.  

Officer Medina and
his partner went to Ms. Salinas=
home.  No one came out of the house in
response to their commands, so the officers secured the residence and waited
for other officers to arrive.  When
Officer Medina entered the house, he observed that it was in disarray with
items knocked onto the floor and that a vase was broken and scattered all over
the floor.  He also observed blood on the
carpet, on the wall, on the desk, and on an iron.  Officer Medina found two children in a
bedroom.  No one else was in the
house.  The police put out a spot broadcast
with descriptive information on Mario Ramos. 


Ms. Salinas was
taken by ambulance to the hospital. 
Officer Medina went to the hospital to speak with her again.  Over Appellant=s
objection, the State introduced Exhibits Nos. 9 through 21, photographs of Ms.
Salinas at the hospital.  Officer Medina
testified that the photographs accurately depicted what Ms. Salinas looked like
in the hospital when he saw her there that day. 
At the hospital, Officer Medina observed bruises on Ms. Salinas= arms and face and saw that skin was
missing from various parts of her body, including her left upper arm and her
neck.  He also observed bruising and
swelling all over her face, including her right eye and her nose.  In addition, Ms. Salinas had a cut on her
lower lip and what appeared to be a burn mark behind her ear and a cut on her
head from an iron.  Based on information
he obtained from Ms. Salinas, Officer Medina obtained an arrest warrant for
Mario Ramos, the Appellant.  








Officer Juan
Montelongo testified that he recovered an iron from the house at 5809
Wrangler.  Detective Bruce Orndorf, of
the Criminalist Unit, testified as a fingerprint expert for the State.  Detective Orndorf compared the prints found
on the iron in blood with palm prints he collected from Appellant.  Detective Orndorf determined that the prints
matched without a doubt.

In his Issue One,
Appellant argues that the trial court erred in having the jury assess
punishment because he filed no written election to have the jury assess
punishment pursuant to Article 37.07, section 2(b) of the Texas Code of
Criminal Procedure.  Appellant asserts
that the trial court had a duty to assess punishment because he did not file a
written election.  Appellant also asserts
that the record is wholly devoid of any election being made by him with regard
to whether the jury or the judge would assess punishment.  

We agree that no
written election appears in the record. 
However, without objection, the trial court instructed the venire panel
during introductory remarks, that A[i]n
the second phase, the accused is entitled to choose whether the punishment will
be assessed by the Judge or by the jury. 
In this trial, the Defendant has chosen to have the jury assess
punishment, if and only if a verdict of guilty is first returned by you, the
jury.@  Appellant also voiced no objection at the
beginning of the punishment phase of trial, fully participated in the punishment
phase by presenting evidence and in opening and closing arguments, and did not
object when the charge on punishment was submitted to the jury.

Article 37.07,
section 2(b) provides:

[I]f a finding of guilty is returned,
it shall then be the responsibility of the judge to assess the punishment
applicable to the offense; provided, however that . . . where the defendant so
elects in writing before the commencement of the voir dire examination of the
jury panel, the punishment shall be assessed by the same jury

. . . .

 

Tex.Code
Crim.Proc.Ann. art. 37.07, '
2(b)(Vernon Supp. 2004-05).








Where the
defendant files no election, the trial court has the duty to assess punishment.
Toney v. State, 586 S.W.2d 856, 858 (Tex.Crim.App. 1979).  A defendant, however, can waive statutory
rights with regard to assessment of punishment. 
Dickson v. State, 492 S.W.2d 267, 270 (Tex.Crim.App. 1973).  We conclude that Appellant has waived the
error by failing to object.  See Tex.R.App.P. 33.1; Dickson, 492
S.W.2d at 271.  Issue One is overruled.

In his Issue Two,
Appellant contends the trial court erred in allowing the State to introduce
into evidence the complaining witness=s
out-of-court statements to police and emergency personnel, namely Clifford
Vance, Officer David Medina, and Herman Miller, over his objection.  Specifically, Appellant argues that the
out-of-court statements were testimonial and their admission affected his
constitutional rights under the Confrontation Clause in the Sixth Amendment of
the United States Constitution and Article I, section 10 of the Texas
Constitution.[1]  The State responds that Appellant has failed
to preserve his complaint for review because he did not raise a Confrontation
Clause objection at trial.  








At trial, Clifford
Vance testified that the demeanor of Ms. Salinas as Achoked
up,@ horrified, very scared, and
shaking.  The State then sought to elicit
testimony that it argued qualified under the excited utterance exception to the
hearsay rule.  In response, defense
counsel stated, A[h]ow
could it be spontaneous if she=s
already been sitting there, she=s
already been comforted by the neighbors, and she=s
responding to questions?@  The trial court overruled the objection.  Mr. Vance then testified that while he was
treating the woman, she kept saying Aplanchar
or panchar@ and that
she had a lot of concern for her children who were across the street, a couple
of houses over.  During Officer Medina=s testimony, he described Ms. Salinas= demeanor as Ascreaming
hysterically.@  The State then sought to elicit further
testimony under the excited utterance exception to the hearsay rule.  In response, defense counsel argued:

Your Honor, again, this is an
out-of-court statement being offered to prove the truth of the matter.  She=s
already been staying in this home, she=s
been comforted by her neighbors, she=s
already had EMS treating her, and it=s
a direct response to questioning her, and there is case law to that, that that
is not an excited utterance, Your Honor.

 

The trial court overruled the
objection.  Officer Medina then testified
that Ms. Salinas was screaming Amy
children@ and told
him that her husband, Mario Ramos, had hit her with an iron.

In his testimony,
Paramedic Herman Miller described Ms. Salinas=
demeanor as Aa
hysterical state.@  The State informed the court that it intended
to question Mr. Miller about what Ms. Salinas told him had happened to her,
arguing that it was admissible under the hearsay exception for medical
treatment.  The following exchange then
occurred:

Defense:           We 
would object, Your Honor, until we can voir dire him out of the presence
of the jury as to whether he even speaks Spanish.  The earlier testimony elicited in this case
indicates they don=t speak
Spanish and that=s why
they brought Medina in. 

 

The
Court:        She doesn=t have to do that outside the presence.

 

Defense:           It would be unfair for him to start
guessing what she said and it will be prejudicial.

 

The
Court:        Absolutely.

 

The
State:         I will ask that question.

 

The
Court:        Objection overruled.

 








Through a court interpreter, Mr.
Miller then testified as to what Ms. Salinas had told him had happened.  Mr. Miller asked Ms. Salinas A[h]ow did it happen to you, what did
they use to burn you, and how did you get burned?@  She told him that her boyfriend had hit her
with an iron.  Mr. Miller also asked
her questions about her medical history. 
On cross-examination, Mr. Miller admitted that he did not know if what
she had told him was true.

To preserve a
complaint for review, a party must have made to the trial court a timely and
specific objection to the complained-of testimony.  See Tex.R.App.P.
33.1(a)(1).  At trial, Appellant raised
only a general hearsay objection to testimony from Mr. Vance and Officer Medina
and only a general objection to testimony from Mr. Miller.  Because Appellant did not object to error
under the Confrontation Clause, he has waived this argument on appeal.

See Paredes v. State, 129
S.W.3d 530, 535 (Tex.Crim.App. 2004); Wright v. State, 28 S.W.3d 526,
536 (Tex.Crim.App.  2000), cert.
denied, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001); Briggs v.
State, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990)(objection at trial is
required to preserve claim that constitutional right to confrontation was
violated); Bunton v. State, 136 S.W.3d 355, 368 (Tex.App.--Austin 2004,
pet. ref=d)(a
hearsay objection does not preserve error on a confrontation claim).  Issue Two is overruled.

Relatedly,
Appellant contends in his fourth issue that his trial counsel rendered
ineffective assistance by failing to specifically object on confrontation
grounds to the admission of Ms. Salinas=
out-of-court statements.  Appellant
asserts that his trial counsel=s
conduct was not reasonable and prejudiced his defense.  In this case, Appellant filed a motion for
new trial, but did not raise an allegation of ineffective assistance of
counsel.  The motion was denied by
operation of law.








We review claims
of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 
To prevail on an ineffective assistance claim, the appellant must show
by a preponderance of the evidence that counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88, 104
S.Ct. at 2064; Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.
1999).  In addition, the appellant must
show that counsel=s
deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the appellant to show there is
a reasonable probability that but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct.
at 2068; Jackson, 877 S.W.2d at 771.

In reviewing
claims of ineffective assistance, we must indulge a strong presumption that
counsel=s conduct
falls within the wide range of reasonable professional assistance and the
appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson,
9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771. 









In Crawford v.
Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the
Supreme Court held that out-of-court testimonial statements by a witness who
fails to testify at trial violate the Sixth Amendment=s
Confrontation Clause unless the witness is unavailable to testify and the
accused had a prior opportunity to cross-examine the witness, regardless of
whether such statements are deemed reliable by the trial court, abrogating its
earlier decision in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65
L.Ed.2d 597 (1980).  Crawford, 541
U.S. at 66-69, 124 S.Ct. at 1373-74.  The
Court left Afor
another day any effort to spell out a comprehensive definition of >testimonial,=@ but stated that Ait applies at a minimum to prior
testimony at a preliminary hearing, before a grand jury, or at a former trial;
and to police interrogations.@  Id. at 68; 124 S.Ct. at 1374.  As to non-testimonial hearsay, the Court in Crawford
indicated that its indicia of reliability analysis in Roberts still
held.  See id. at 68; 124
S.Ct. at 1374; Roberts, 448 U.S. at 66, 100 S.Ct. at 2539 (evidence
bears sufficient indicia of reliability if it either falls within a firmly
rooted hearsay exception or contain particularized guarantees of
trustworthiness); Guidry v. State, 9 S.W.3d 133, 149 (Tex.Crim.App.
1999).

Following Crawford,
different analyses apply to non-testimonial hearsay and testimonial
hearsay.  See Crawford, 541 U.S.
at 68; 124 S.Ct. at 1374.  Therefore, our
first task is to determine whether the complained-of out-of-court statements by
Ms. Salinas to Mr. Vance, Officer Medina, and Mr. Miller were testimonial or
non-testimonial.  In his brief, Appellant
asserts that the out-of-court statements attributed to Ms. Salinas were
testimonial because they were taken during the course of interrogation,
investigation, and treatment.  We
disagree.








The record shows
that the police arrived at Mr. Buchanan=s
house ten to twelve minutes after his emergency call.  At the time Ms. Salinas made her statements
to police and emergency personnel, she was shaking, crying, screaming, and
hysterical.  Mr. Vance testified that
during the course of assessing and treating her injuries at the house, Ms.
Salinas repeatedly stated, Aplanchar@ or Apanchar@ and expressed concern for her
children.  While she was receiving
medical attention from Mr. Miller, Ms. Salinas told him that her boyfriend had
hit her with an iron.  Her statement was
made in response to questions Mr. Miller had asked while assessing her
injuries.  Officer Medina arrived at the
house after emergency personnel.  He
found the victim being treated for her injuries and screaming
hysterically.  Ms. Salinas was screaming Amy children@
and that her husband had hit her. 
Officer Medina asked her Ahow@ and she said Awith
an iron.@  She also identified her husband as Mario
Ramos.

None of these
statements were made in a formal setting, in response to tactically structured
police questioning, or were the product of custodial interrogation as that term
is used in Crawford.  See
Crawford, 541 U.S. at 51-53; 124 S.Ct. at 1364, 1365 n.4.  Rather, it is apparent that Ms. Salinas= statements were made during the
initial interaction between the victim and police/emergency personnel, in which
the safety and medical needs of the victim were paramount, and not A>under
circumstances which would lead an objective witness reasonably to believe that
the statement would be available for use at a later trial.=@  See id. at 52; 124 S.Ct. at
1364.  Therefore, we conclude that the
hearsay statements in question were non-testimonial in nature. 








At trial,
Appellant=s
objections to the out-of-court statements made to Mr. Vance and Officer Medina
were overruled on grounds that the statements were admissible under the excited
utterance exception to the hearsay rule. 
See Tex.R.Evid. 803(2).  The trial court overruled Appellant=s objection to Mr. Miller=s testimony about statements made by
Ms. Salinas based on the State=s
argument that the evidence was admissible under the hearsay exception for
statements made for purposes of medical diagnosis or treatment.  See Tex.R.Evid.
803(4).  Under the Roberts
analysis, the non-testimonial hearsay statements would not offend the
Confrontation Clause because the statements fell within a firmly rooted hearsay
exception or bore particularized guarantees of trustworthiness.  See Roberts, 488 U.S. at 66, 100 S.Ct.
at 2539.  Therefore, counsel=s failure to raise a Confrontation
Clause objection was not outside the wide range of reasonable professional
assistance.  See Thompson, 9
S.W.3d at 814.  Issue Four is overruled.      Returning to his Issue Three, Appellant
asserts that the trial court erred in admitting State=s
Exhibits Nos. 9 through 21, photographs of Ms. Salinas at the hospital, and
argues that the probative value of the photographs was substantially outweighed
by their prejudicial value.  

During Officer
Medina=s
testimony, the State sought to introduce photographs of Ms. Salinas as she
appeared at the hospital when Officer Medina met with her on the same day as
the assault.  Appellant objected to their
admission, stating that the photographs were Acalculated
to inflame the passions of the jury . . . .@  After reviewing the exhibits, the trial court
overruled Appellant=s
objection and admitted them into evidence. 
Officer Medina then gave verbal testimony as to what injuries were
depicted in the State=s
Exhibits Nos. 9, 12, 13, 14, 15, and 

17--specifically, various burn
wounds to Ms. Salinas=
left upper arm, the right side of her neck, numerous bruises on her arms, face,
and neck.  Notably, State=s Exhibits Nos. 12, 13, 14, 15, and 17
showed close-ups of particular injuries to Ms. Salinas=
face, neck, behind her ear, scalp, and forearm. 
State=s Exhibit
No. 10 contained four small photographs that showed the bruises to
Ms. Salinas= legs and
arms from a distance.  State=s Exhibit No. 11 showed a frontal shot
of Ms. Salinas fully clothed and reclining on a hospital bed.  State=s
Exhibits Nos. 16 and 18 showed bruising on Ms. Salinas=
body.  State=s
Exhibit No. 19 showed a burn wound. 
Finally, State=s
Exhibits Nos. 20 and 21 showed close-ups of bruising on Ms. Salinas= legs.








We review the
trial court=s ruling
to admit or exclude evidence under an abuse of discretion standard.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex.Crim.App. 2000); Montgomery v. State, 810 S.W.2d 372, 379-80
(Tex.Crim.App. 1990); see also Williams v. State, 958 S.W.2d 186, 195
(Tex.Crim.App. 1997)(admissibility of a photograph is within the trial court=s sound discretion).  The trial court has abused its discretion if
its decision falls outside the Azone
of reasonable disagreement.@  Weatherred, 15 S.W.3d at 542; Montgomery,
810 S.W.2d at 391.  Absent a clear abuse
of discretion, the trial court=s
ruling will not be reversed.  See
Levario v. State, 964 S.W.2d 290, 296 (Tex.App.--El Paso 1997, no pet.).

Appellant does not
dispute the relevancy of the proffered photographs.  See Tex.R.Evid.
401.  Rather, Appellant contends that the
photographs were unduly prejudicial. 
Under Tex.R.Evid. 403,
relevant evidence Amay be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice . . . .@  See Tex.R.Evid.
403.  Rule 403 presumes that the evidence
will be more probative than prejudicial. 
See Williams, 958 S.W.2d at 196. 
In determining whether the probative value of photographs is
substantially outweighed by the danger of unfair prejudice, courts may consider
several factors, including, but not limited to:

(1)        the number of exhibits offered;

 

(2)        the gruesomeness of the photographs;

 

(3)        the details shown in the photographs;

 

(4)        the overall size of the photographs;

 

(5)        whether the photographs are in black and
white or color;

 

(6)        whether the photographs are close-up;

 

(7)        whether the body depicted is naked or
clothed; and

 








(8)        the availability of other means of
proof, and the circumstances unique to each individual case.  

 

See Williams, 958 S.W.2d at
196; Long v. State, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

In the present
case, nineteen photographs of the victim were admitted into evidence.  The appellate record contains black and white
photocopies of the photographs, eight of which each measure three and one-half
inch by three inch, while the remaining photographs each measure five and
one-quarter inch by seven inch.  While
some show close-ups of particular injuries to Ms. Salinas= face and neck, we do not consider them
repetitive or cumulative.  Rather, they
are descriptive of the multiple types of injuries Ms. Salinas sustained from the
assault.  Ms. Salinas did not testify
during the innocence-guilt phase of the trial. 
Therefore, the photographs, along with testimony from the officer and
emergency personnel, provided evidence of the character and the extent of the
injuries involved.  Further, the
photographs are neither gruesome nor gory in detail.  We conclude that the photographs were more
probative than prejudicial, thus, the trial court did not abuse its discretion
in admitting them into evidence.  Issue
Three is overruled.

We affirm the
trial court=s
judgment.

 

August 11, 2005

DAVID WELLINGTON CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant asserts in his brief that his federal and state constitutional rights
to confrontation were violated, yet he has failed to present or articulate an
argument in support of his state constitutional issue.  See Tex.R.App.P.
38.1(h).  Therefore, we will only address
his claim under the federal constitution. 
See Black v. State, 26 S.W.3d 895, 896 n.4 (Tex.Crim.App. 2000); Lagrone
v. State, 942 S.W.2d 602, 614 (Tex.Crim.App. 1997).